UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| COURTNEY BEER, as Personal Representative of the ESTATE OF MARILYN BAER, | ) ) ) ) | |
| Plaintiff, | ) ) | 2:24-cv-00197-LEW |
| v. | ) ) | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR MANUFACUTRING CANADA, INC., and MAINE MALL MOTORS d/b/a BERLIN CITY AUTO GROUP, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR REMAND**

Plaintiff Courtney Beer, as representative of her mother's estate, initiated this civil action in the Cumberland County Superior Court. Defendant Toyota Motor Sales ("TMS"), with the consent of its co-defendants, removed the case from state court. In its Notice of Removal, TMS asserted that this Court has diversity jurisdiction because Beer fraudulently joined Defendant Maine Mall Motors to defeat diversity of citizenship. The matter is before the Court on Beer's Motion to Remand (ECF No. 23). Beer requests that the case be remanded to the state court, contending that Maine Mall Motors was properly joined and that Defendants have failed to show fraudulent joinder. Because I conclude that

1

Maine Mall Motors was improperly joined based on Beer's failure to reasonably investigate her claim, the Motion to Remand is DENIED.

## BACKGROUND

Beer, a Maine citizen, filed a forty-eight count Complaint on behalf of her mother's estate against Defendants in the Cumberland County Superior Court in September 2023. Beer's claims, all sounding in tort, arise from the death of her mother, Marilyn Baer. Baer's death was allegedly caused by injuries stemming from her defective 2021 Lexus RX 350. Counts thirty-seven to forty-eight allege various theories of negligence and strict liability against Defendant Maine Mall Motors.

The Complaint alleges that Maine Mall Motors is "a Maine corporation that is domiciled at 227 Maine Mall Road, South Portland . . . functioning and doing business as the authorized dealer" of its co-defendants "and a retailer of new and used Toyota and Lexus vehicles which were designed, manufactured, and sold by" its co-defendants. Compl. ¶ 6 (ECF No. 1-3). Maine Mall Motors allegedly "performed and completed a pre-delivery inspection" of the Lexus RX 350 and sold it to Baer. *Id.* ¶¶ 11–12.

When Beer filed this lawsuit, she had the vehicle's CarFax, its window sticker, a payment plan and specification, and a temporary registration. Mot. at 10. The CarFax states that Baer's vehicle was inspected by and purchased from Berlin City Toyota/Lexus in Portland, Maine. Mot Ex. 30 at 2. The website domain www.berlincity.com is listed; this is the website for Berlin City Auto Group. *Id.* The Lexus window sticker states "Berlin City Lexus/Portland" at 191 Riverside Street, Portland, Maine. Mot Ex. 31 at 1. The paperwork with the vehicle's specifications, the vehicle's registration, and the notice of

2

sale all list "Berlin City of Portland" (with the Riverside Street address) as the seller. *Id.* at 3, 9, 15.

Defendants explain that Berlin City Auto Group is a trade name used by numerous car dealerships, like Maine Mall Motors and Berlin City of Portland, Inc., that are owned by Berlin City Car Center, Inc., a New Hampshire corporation. Resp. (ECF No. 29) Ex. 1 at 2. Berlin City of Portland sells Lexus and Toyota vehicles in Portland whereas Maine Mall Motors sells Nissan vehicles in South Portland. *Id.*

According to Maine's Bureau of Corporations, Elections and Commissions, Maine Mall Motors's registered address is 227 Maine Mall Road in South Portland, Maine, and its head office address is 191 Riverside Street in Portland. Mot. Ex. 30 at 4–5. Berlin City of Portland, Inc., has its head office at 485 Main Street, Gorham, New Hampshire, and its mailing address and registered address is 191 Riverside Street in Portland, Maine. *Id.* at 6–7.

The vehicle's bill of sale has a logo with the text "Berlin City Auto Group." Next to that are two addresses. First, there is 255 Maine Mall Road in South Portland, Maine. Second, there is 191 Riverside Street in Portland, Maine. The Berlin City website is listed below both addresses. According to Beer, her mother went to Berlin City Auto Group at 191 Riverside Street in Portland and was assisted by Glenn Gaitor, a salesperson and employee of Berlin City Auto Group. Mot. Ex. 1 at 1. Defendants state that Gaitor works for Berlin City Lexus of Portland. Resp. Ex. 1 at 2.

## DISCUSSION

"When plaintiffs file a civil action in state court over which the federal courts would have had original jurisdiction based on diversity of citizenship, the defendants may remove the action to federal court, provided that no defendant 'is a citizen of the State in which such action is brought.'"[1] *Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014) (internal citation omitted) (quoting 28 U.S.C. § 1441(b)(2)). Diversity jurisdiction requires complete diversity between the plaintiffs' and defendants' citizenship. 28 U.S.C. § 1332; *see also Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008). Corporations are considered citizens of the state(s) of their incorporation and the state of their principal place of business. 28 U.S.C. § 1332(c)(1). "While the First Circuit has not addressed the question, it is generally recognized that, under the" fraudulent-joinder doctrine, "removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant."[2] *Universal Truck & Equip. Co.*, 765 F.3d at 108.

The defendant also bears the burden of demonstrating that the joinder was in bad faith. *In re Me. Asbestos Cases*, 44 F. Supp. 2d 368, 371 (D. Me. 1999) (citing *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995)). "Subjective good

---

[1] This so-called home-defendant rule has been described as a waivable, non-jurisdictional rule. *See Lively v. Wild Oats Markets*, *Inc.*, 456 F.3d 933, 940 (9th Cir. 2006).

[2] As described by other circuits, "this standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp.*, *Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).

faith on the plaintiff's part [is] not enough" because "joinder is fraudulent where it is based on false allegations and the plaintiff has 'willfully close[d] his eyes to information within his reach.'" *Id.* (second alteration in original) (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185 (1907)); *see also Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 5 (D. Mass. 2001) (stating that when "a plaintiff is mistaken about the factual basis for his claim, a court may infer a wrongful joinder where the plaintiff failed to conduct a reasonable investigation." (citing *Wecker*, 204 U.S. at 185)).[3] As summarized by Judge Hornby,

> [t]he party challenging the joinder must prove to a legal certainty that, at the time of filing the complaint, no one familiar with the applicable law could reasonably have thought, based on the facts that the pleader knew or should have known at the time, that a cause of action against the resident defendant could ultimately be proven.

*In re Me. Asbestos Cases*, 44 F. Supp. 2d at 372.

Courts generally "star[t] with the parties' pleadings but may also consider summary judgment type evidence, such as affidavits, transcripts, and exhibits" and all factual and legal ambiguities must be resolved in the plaintiff's favor. *In re Mass. Diet Drug Litig.*,

---

[3] Some district courts have reasoned that when a "plaintiff may have mistakenly sued the wrong party," that is a "substantive defense to the merits of the claim, not an issue that bears on the existence of diversity jurisdiction." *See, e.g.*, *Shenkar v. Money Warehouse, Inc.*, No. 07-CV-20634, 2007 WL 3023531, at *2 (S.D. Fla. Oct. 15, 2007). Although Beer does not make this argument, I find such a categorical rule to be unpersuasive and inconsistent with how district courts in this circuit have articulated the doctrine of fraudulent joinder by extrapolating from relevant Supreme Court cases. *See, e.g.*, *In re Me. Asbestos Cases*, 44 F. Supp. 2d at 371 ("In *Wecker*, the Court held that diversity jurisdiction existed and that removal was therefore proper where affidavits submitted by the parties conclusively showed that the plaintiff's allegations in its complaint against a nondiverse defendant had no basis in fact." (citing *Wecker*, 204 U.S. at 185)). In some cases, the plaintiff's allegations against a non-diverse defendant will have no basis in fact. But in other cases, the plaintiff may have stated a possible claim against a defendant that they mistakenly sued because of that defendant's control over another entity. *See, e.g.*, *Herrington v. Nature Conservancy*, No. 19-CV-10896-GW-GJSX, 2020 WL 1154754, at *6 (C.D. Cal. Mar. 9, 2020).

5

338 F. Supp. 2d 198, 202 (D. Mass. 2004) (internal citation omitted). "Any doubts concerning the court's jurisdiction should be resolved against removal and in favor of remand to the state court." *Id.*

Beer argues that "MAINE MOTORS D/B/A BERLIN CITY AUTO was and is the company that *sold* the Subject Vehicle to the Decedent." Mot. at 9. She "sued the Toyota dealership that she believed was the proper entity that sold the defective vehicle" based on the information she had. *Id.* at 3. Her counsel had about one week to file suit before the statute of limitations expired, so he did his "best to identify all potential defendants liable in this matter." *Id.* Even if Beer sued the wrong entity, she argues that Defendants have not demonstrated that she has no possibility of relief against Maine Mall Motors.

Defendants contend that remand is inappropriate because Maine Mall Motors did not sell the vehicle, so Beer "named the wrong dealership entity as a Defendant." Resp. at 1. In their view, even if Beer mistakenly sued Maine Mall Motors, they have demonstrated fraudulent joinder because Beer failed to reasonably investigate which entity inspected and sold the allegedly defective vehicle. *Id.* at 5.

All of the documents within Beer's possession when she filed her Complaint identify Berlin City of Portland—rather than Maine Mall Motors d/b/a Berlin City Auto Group—as having inspected and sold the vehicle. Maine Mall Motors does not even sell Toyota or Lexus vehicles. Resp. Ex. 1 at 3. Thus, Beer sued the wrong dealership.

I have no reason to believe that Beer subjectively acted with bad faith when suing Maine Mall Motors. However, Beer sued the wrong dealership based on a failure to reasonably investigate which dealership handled Baer's vehicle, so I can infer wrongful

6

joinder. *See Mills*, 178 F. Supp. 2d at 5. I have not seen a single document associated with the vehicle that referenced Maine Mall Motors; instead, the documentation repeatedly states that Berlin City of Portland sold the vehicle. Beer argues that the documents' reference to Berlin City Auto Group demonstrates that Maine Mall Motors sold the vehicle. But even on the bill of sale, where the Berlin City Auto Group logo appears, Berlin City of Portland is listed as the seller. Mot. Ex. 30 at 15–16. The affiliation between Maine Mall Motors and Berlin City Auto Group does not support Beer because the affiliation by itself does not suggest that Maine Mall Motors ever handled the vehicle. Simply put, Maine Mall Motors has no "real connection" to this case, *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921), and the exhibits "conclusively sho[w] that the plaintiff's allegations in [her] complaint against [Maine Mall Motors] had no basis in fact." *In re Me. Asbestos Cases*, 44 F. Supp. 2d at 371 (citing *Wecker*, 204 U.S. at 185). Thus, Defendants have demonstrated that Maine Mall Motors was fraudulently joined.[4] Accordingly, Maine Mall Motors's citizenship is to be disregarded, and there is diversity jurisdiction.

## CONCLUSION

For these reasons, Beer's Motion to Remand (ECF No. 23) is **DENIED**. Defendants' request for oral argument (ECF No. 29 at 2) and Motion for Leave to File a

---

[4] Beer also challenges TMS's removal as untimely. In her view, because she sent TMS a courtesy copy of the complaint in October 2023, TMS's removal on May 29, 2024, was well beyond the thirty-day period set forth in the federal removal statute, 28 U.S.C. § 1446(b)(1) (stating that the notice of removal must be "filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading," or "within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." Beer's argument is foreclosed by *Murphy Bros.*, *Inc. v. Michetti Pipe Stringing*, *Inc.* 526 U.S. 344, 347–48 (1999). There, the Supreme Court held that the "mere receipt of the complaint unattended by any formal service" does not trigger the defendant's time to remove. *Id.* at 348. Because TMS was not formally served until May 1, 2024, its removal in late May was timely.

Sur-Reply (ECF No. 32) are **DENIED** as moot.  Maine Mall Motors is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.[5]

SO ORDERED.

    Dated this 9th day of August, 2024.

/s/ Lance E. Walker<br>Chief U.S. District Judge

---

[5] *See Anderson v. Lehman Bros. Bank*, *FSB*, 528 F. App'x 793, 796 (10th Cir. 2013) (reasoning that a dismissal without prejudice for lack of jurisdiction is appropriate).